(No. 12915.—Reversed and remanded.)

ROBERT H. HEADEN *et al.* Defendants in Error, *vs.* MARK C. COHN, Plaintiff in Error.

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. ADMINISTRATION—*there is no necessity for administration where there are no debts.* Where there are no debts owing by the estate of an intestate there is no necessity for administration.

2. SAME—*administrator in State of domicile of intestate is entitled to money in Illinois.* Administration in Illinois of property of an intestate domiciled in another State is ancillary and is granted in order to reduce property in Illinois to money, and where it is admitted there are no debts in Illinois but there are debts in the State of the domicile, the administrator in the State of the domicile is entitled to the money.

3. SAME—*distribution of a non-resident's personal property in Illinois is governed by Illinois statute.* At common law the succession to personal property was governed by the law of the domicile of the intestate at the time of his death, without regard to the actual situs of the property at the time, but the Illinois Statute of Descent by express terms applies to both real and personal property in Illinois of resident and non-resident proprietors dying intestate,

and the distribution of tangible personal property actually in Illinois and belonging to a non-resident dying intestate is governed by the Illinois statute. (*Cooper* v. *Beers,* 143 Ill. 25, approved; *Russell* v. *Madden,* 95 id. 485, distinguished.)

4. SAME—*rules of inheritance are controlled by statute.* Rules of inheritance, both as to real and personal property, are subject to control and regulation by statute, and, except as to rights already vested, may be changed at the pleasure of the legislature, and the law existing at the time the descent is cast governs the right to inherit.

5. SAME—*descent and heirship of real property are governed by law where land lies.* The descent and heirship of real property are governed by the law of the place where the land is situated.

6. PLEADING—*when answer must be taken as true.* Where no replication is filed to the answer and a hearing is had on the bill and answer alone, the answer is to be taken as true.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. NORMAN L. JONES, Judge, presiding.

BEACH & TRAPP, and DEAN HILL, for plaintiff in error.

THOMPSON & THOMPSON, BELLATTI, BELLATTI & MORIARTY, and W. N. HAIRGROVE, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case is brought to this court from the Appellate Court for the Third District by petition for writ of *certiorari* to review a judgment of that court affirming a decree of the circuit court of Morgan county.

The lands of Fannie Hills Headen, who died intestate, were sold at partition sale under a decree of the circuit court of Morgan county, and the proceeds of the sale, after payment of costs and expenses, were ordered distributed among her heirs, eight in number. There was in the hands of the master in chancery when the final decree for distribution was entered, $7309.08 for each of said heirs. The decree of the circuit court, which was entered March 16, 1918, ordered the master to pay said amount to each of the heirs.

Hannah Headen Cohn was one of the heirs and the decree directed the master to pay to her said sum. She lived in California, was married, but had no children or descendants of a child or children. She died intestate March 27, 1918, before the money was paid to her by the master. After her death her surviving brothers and sisters filed a supplemental bill in the partition suit, setting up the facts as to the partition suit, the death of Mrs. Cohn before receiving her distributive share, that she left no child or children, and alleging her surviving husband and her brothers and sisters were her only heirs-at-law. The bill alleged that under the Statute of Descent of the State of California, where a person dies intestate leaving no issue and no father or mother, one-half of the estate descends to the surviving husband or wife and one-half to the brothers and sisters of the decedent. The statute was set out in the bill. The bill prayed a decree directing the master in chancery to pay one-half the amount in his hands belonging to the estate of Mrs. Cohn to her brothers and sisters, share and share alike, and the other half to the surviving husband, Mark C. Cohn, or that the master be directed to pay all of said sum to Robert H. Headen and Margaret M. Killam, who, the bill alleged, had been appointed by the county court of Morgan county and had qualified as administrators of the estate of Mrs. Cohn. The supplemental bill alleged there were no debts owing by the estate in Illinois, and further alleged on information that Mark C. Cohn, the surviving husband, had been appointed administrator of the estate in California.

Mark C. Cohn answered the bill, admitting he was appointed, qualified and is administrator in the State of California, which is the State of the main and principal administration of said estate, and denying the legality of the appointment of Robert H. Headen and Margaret M. Killam in Illinois; admits there are no debts owing from the estate of Mrs. Cohn in this State, and alleges the statute of California set out and relied upon by complainants has no ap-

plication to personal property in this State but such property is specially excepted by the code of California, wherein it is provided that the law of descent concerns only property in that State or in a State having the same law of descent as the State of California; that the law of descent of Illinois is different from the law of California, and under it the surviving husband of a wife dying without issue takes all of the personal estate. The answer avers Mrs. Cohn left no estate other than the $7309.08 in the master's hands; that she left debts in the State of California and no other estate to pay them. Cohn also filed a cross-bill alleging substantially the same matters set up in his answer; that as administrator he had demanded the money from the master but payment was refused. The cross-bill prayed an order and decree directing the master to pay cross-complainant the sum of $7309.08 upon his execution, as administrator, of a bond to be approved by the court, to save harmless the master from all creditors or debts of the estate; that it be ordered and adjudged that, subject to debts, costs and expenses, no other person, party or corporation has any title, interest or claim to said money except cross-complainant.

The answer to the cross-bill denied the right of cross-complainant to the relief prayed and relied substantially on the same matters alleged in the supplemental bill. Among other matters the answer to the cross-bill alleged respondents did not know whether Cohn had been appointed and qualified as administrator in California; denied the money in the master's hands is the only property or estate of Mrs. Cohn, and alleged at the time of her death Mrs. Cohn had a large estate in California, and that no part of the money in the master's hands was required to administer her estate there. Cross-complainant filed a replication to the answer. No replication was filed by the complainants in the original supplemental bill to the answer of Cohn.

The cause was heard on the pleadings, no proof being offered by either party, and a decree entered finding the

money should be distributed under the statute of California, one-half to the surviving husband and the other half to the surviving brothers and sisters of Mrs. Cohn. The master was ordered to hold the money awaiting administration of the estate until satisfactory proof was made as to the necessity for using any part of the fund for the payment of debts and the court retained jurisdiction for that purpose.

As to some of the facts there is no dispute, viz., that California was the domicile of Mrs. Cohn at the time of her death, and while defendants in error's answer alleges the fund is real estate, their brief admits that the money in the master's hands is personal property belonging to the estate of Mrs. Cohn. It is not denied that plaintiff in error was duly appointed and qualified as administrator in California. In their original supplemental bill the defendants in error alleged on information that plaintiff in error was appointed administrator in California. In his answer to the supplemental bill, and in his cross-bill, plaintiff in error alleges he was duly appointed administrator by the superior court of the State of California and is lawfully acting as such. In their answer to the cross-bill defendants in error alleged that, not knowing, they did not admit plaintiff in error had been appointed and qualified as administrator in California. There having been no proof offered by either party, we think, under the state of the pleadings, the assumption is warranted that plaintiff in error was the administrator in the State of California.

It was admitted there are no debts of the estate in Illinois. There was therefore no necessity for administration in this State. But even if there had been debts here, when they were paid the courts of this State would have no authority to retain the property of the estate as against the administrator in the State of the domicile of the intestate, which is the principal administration and through which the debts of the estate are to be paid and the assets distributed. And this rule is especially applicable where no debts of the

estate ever existed in this State. The answer of plaintiff in error alleged Mrs. Cohn left no other estate or property than the money in the master's hands and that there were debts owing by the estate in California. No replication was filed to the answer. When a hearing is had on bill and answer alone, the answer is to be taken as true. (*Roach* v. *Glos*, 181 Ill. 440; *Sheahan* v. *Madigan*, 275 id. 372.) Under such a state of the record the administrator in the State of the domicile and where there were debts of the estate was entitled to the money. (*Young* v. *Wittenmyre*, 123 Ill. 303; *Dickinson* v. *Belden*, 268 id. 105.) In *Ramsay* v. *Ramsay*, 196 Ill. 179, it was said the administration in the domicile of the deceased is the principal administration through which, in contemplation of law, assets are to be distributed in payment of debts, while administration in another State is ancillary and is granted in order to reduce the assets of the estate to money. It was there further held to be the duty of an ancillary administrator to reduce the assets of the estate to money and transmit the money to the principal administrator, though under certain circumstances he might pay claims probated and allowed and transmit the balance to the principal administrator. Here no rights of creditors in this State are involved. It is admitted there are no creditors of the estate in this State.

Defendants in error contend that the law of the State of California governs the distribution of the money; that they are entitled to one-half of it, and the fund, being in a court of equity, should not be turned over to the administrator in California, where it is claimed not more than a small part of it will be required to pay debts, thus permitting the administrator to charge commissions on the fund and compel defendants in error to litigate their rights in that State. Whether that contention would be correct if it were admitted the descent and distribution of the money are governed by the statute of California we do not decide. It is, however, denied that the law of California controls, and it is

contended,—and we think correctly,—that the distribution is governed by the statute of Illinois. The rule of the common law is that the succession to personal property is governed by the law of the domicile of the intestate at the time of his death, without regard to the actual situs of the property at the time. Rules of inheritance are subject to control and regulation by statute, and except as to rights already vested may be changed and modified at the pleasure of the State legislature, and the law existing at the time the descent is cast governs the right to inherit. The descent and heirship of real estate are governed by the law of the place where the land is situated. (*Wunderle* v. *Wunderle,* 144 Ill. 40; *McCartney* v. *Osburn,* 118 id. 403.) The legislature of Illinois has the same power to provide for the descent and heirship of personal property in this State that it has to control the heirship and descent of land in this State. By the first section of our Statute of Descent (Hurd's Stat. 1917, p. 1072,) it is provided: "That estates, both real and personal, of residents and non-resident proprietors in this State dying intestate, or whose estates or any part thereof shall be deemed and taken as intestate estate, after all just debts and claims against such estates are fully paid, shall descend to and be distributed in manner following, to-wit: * * * Third, when there is a widow or surviving husband, and no child or children, or descendants of a child or children of the intestate, then (after the payment of all just debts) one-half of the real estate and the whole of the personal estate shall descend to such widow or surviving husband as an absolute estate forever, and the other half of the real estate shall descend as in other cases, where there is no child or children or descendants of a child or children."

· It will be seen the statute by express terms applies to both real and personal property in this State of resident and non-resident proprietors dying intestate. This statute was considered by this court in *Cooper* v. *Beers,* 143 Ill. 25,

though the precise question here raised was not there involved. In that case Mrs. Cooper was domiciled in Missouri. Shortly before her death there she placed in the hands of a party in Bloomington, Illinois, temporarily for safe keeping, certain choses in action in the form of notes and bonds, and they remained there until her death. A question arose whether the distribution of the choses in action was governed by the law of Missouri or Illinois, and it was held the property was not in a legal sense "property in this State;" that the notes and bonds followed the person of the owner, and her domicile being in the State of Missouri at the time of her death they were in legal contemplation "property in Missouri." The court said: "The still further contention of counsel for appellant that our statute changes the common law rule whereby personal estate follows the person of its owner and is distributed pursuant to the law of his domicile at the time of his death is sufficiently answered by the fact that the statute has by its own terms reference only to 'property in this State,' (Rev. Stat. 1874, sec. 1, chap. 39,) and since the only property right which there can be in a debt is the mere right to receive payment of it, it is impossible that there can be anything of a tangible nature connected with such right which can occupy locality, and so the property right must accompany and remain with the person of the owner of the debt, and therefore it can not be in this State when the domicile of the owner is in another State." This is in harmony with the general rule that a debt is an intangible thing with an actual situs nowhere but by a fiction of law is given situs at the domicile of the owner. The clear inference from the decision is that the statute does apply to property actually "in this State." To construe the statute otherwise would be contrary to its positive, plain language. *Russell* v. *Madden*, 95 Ill. 485, is not in conflict with this conclusion. In that case both the domicile and the property were in the same place, Sonora, Mexico, and it was held the law of that place gov-

erned the succession and not the law of the place where the heirs resided.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court for further proceedings and decree in harmony with the views herein expressed.

*Reversed and remanded.*